# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OLD REPUBLIC INSURANCE COMPANY and ROADWAY EXPRESS, INC., | )<br>)<br>) |
| Plaintiffs, | **MEMORANDUM OPINION AND RECOMMENDATION** |
| v. | 1:08CV402 |
| CONSTANCE SUE HORN, Individually, and as Administratrix of the Estate of Mark Joseph Horn, deceased, | |
| Defendant(s). | |

In this case Plaintiffs Old Republic Insurance Company ("Old Republic") and Roadway Express, Inc. ("Roadway") seek a declaratory judgment pursuant to 28 U.S.C. § 2201 regarding Old Republic's obligation to provide underinsured motorist ("UIM") coverage under an indemnity policy between Plaintiffs. Defendants have filed a counterclaim contending that Defendants are entitled to $3 million in UIM coverage from Roadway and $3 million in excess UIM coverage from Old Republic. Defendants allege that, among other things, in refusing to pay $6 million in UIM coverage, Plaintiffs breached their fiduciary duties, committed fraud, and committed unfair and deceptive insurance practices. Pending before this court is a motion for summary judgment filed by Plaintiffs as to Plaintiffs' claim of no UIM coverage, and a separate motion for summary judgment as to Defendants' counterclaim. (docket nos. 43, 45). The parties have filed responsive pleadings, and this matter is ripe for

disposition. Since there has been no consent, I must deal with the motions by way of a recommendation. For the reasons that follow, it will be recommended that both of Plaintiffs' summary judgment motions be granted.

**Background**

As noted, this action involves an insurance coverage dispute. Plaintiffs Old Republic and Roadway brought this declaratory judgment action pursuant to 28 U.S.C. § 2201(a), seeking a determination that a policy of motor vehicle liability insurance issued by Old Republic to Roadway affords no underinsured motorist ("UIM") coverage for bodily injury damages sustained by Mark Joseph Horn in an automobile accident on March 7, 2004. The claims are in this court based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).

**Undisputed Facts**

The Accident

At all times relevant to this lawsuit, Roadway was a for-hire motor carrier engaged in the interstate business of transporting freight. On March 7, 2004, Mark Joseph Horn was killed in a traffic accident with drunk driver Mickey Joe Hayes near Pilot Mountain, North Carolina. At the time of the accident, Horn was employed as an over-the-road driver for Roadway and was driving a tractor trailer owned by Roadway. Roadway filed a property damage suit against Hayes in North Carolina state court on July 14, 2004. Horn's widow Constance Sue Horn later intervened in Roadway's action, asserting claims for wrongful death against Hayes. On about

March 11, 2008, a judgment of $6 million was entered in favor of Defendants against Hayes.

Defendants Receive Insurance Proceeds from Hayes

At the time of the accident, the drunk driver Hayes was covered by an automobile liability insurance policy from Progressive Southeastern Insurance Company with limits of liability of $50,000 per person and $100,000 per accident. Defendants have received the $50,000 policy limits from Hayes' insurance policy.

Indemnity Policy between Roadway and Old Republic

At the time of the accident, Roadway was insured under a Motor Carrier's Indemnity Policy, policy number MWML 18562 (the "Policy"), issued by Old Republic. The Policy was effective from March 1, 2004, to March 1, 2005. (*See* Compl., Ex. D.) Under the terms of the Policy, Roadway had a deductible of $3 million, which was equal to the Policy's $3 million limit of liability. The deductible provisions of the Policy are explicitly set forth in an endorsement titled "Deductible Coverage Endorsement--Deductible Amount(s) Equal To The Limit(s) of Insurance/Liability," which sets forth, in pertinent part:

> A. The Coverages of your policy are subject to deductibles. The deductible amount(s) equal the Limit(s) of Insurance/Limit(s) of Liability applicable to the Coverage under which sums are payable as damage(s), a claim(s) is made, "suit(s)" is brought or "loss(es)" is payable. . . . .
>
> The deductible reduces the applicable Coverage Limit(s) of Insurance/Limit(s) of Liability.

Compl., Ex. D, pt. 3.

The Policy also contains provisions regarding uninsured (UM) and underinsured (UIM) motorist coverage. The Policy's Business Auto Coverage Form describes those vehicles that are subject to UM/UIM coverage as follows: "Only those autos you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." The Policy then lists those states for which UM/UIM coverage is provided in some amount because the laws of those states do not allow complete rejection of coverage. The Policy only provides coverage in those states up to the limits the Policy designated for each state.

Here, the vehicle driven by Horn at the time of the accident consisted of a tractor and two trailers connected by a dolly. The tractor was licensed in Illinois, but had no principal place where it was garaged. Instead, it was driven all across the country hauling freight. When not on the road, the tractor was temporarily parked and serviced at various Roadway garages all over the country. The first trailer was licensed in Illinois, and the second trailer was licensed in Tennessee. The dolly was licensed in California. Like the tractor, the trailers and the dolly had no principal place where they were garaged. Rather, they were driven all across the country hauling freight, and then temporarily parked and serviced at various Roadway garages all over the country.

Of the states where the tractor trailer combination was licensed, California and Tennessee permitted insureds to fully reject UM/UIM coverage, and Roadway did reject UM/UIM coverage for all vehicles in California or Tennessee. UM/UIM coverage could not be completely rejected in Illinois; therefore, the Policy provided limited UM/UIM coverage of $20,000 per person and $40,000 per accident to persons occupying vehicles licensed or principally garaged in Illinois. Of the remaining states, the Policy rejected UM/UIM coverage where it could be rejected. Roadway specifically rejected North Carolina UM/UIM on a form promulgated by the North Carolina Rate Bureau.[1]

**Discussion**

**Standard of Review**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

---

[1] As the court will discuss, *infra* note 3, although Roadway used the Rate Bureau form, it was not required to use this specific form to effectively reject UM/UIM coverage.

non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir. 1995). Mere allegations and denials, however, are insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251 (citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. With these principles in mind, the court will address the motions for summary judgment.

I first note that Defendants have not asserted any evidence in response to either of Plaintiff's motions for summary judgment. Instead, in both response briefs, Defendants merely complain about issues related to discovery. Arguably, then,

Defendants have conceded that Plaintiffs are entitled to summary judgment as to the issue of the policy coverage, and Defendants have abandoned their counterclaim. Rather than disposing of the Plaintiffs' summary judgment motions summarily, I will address the merits of each motion.

<u>Plaintiffs' Contention that the Policy Provides No UM/UIM Coverage for the Accident</u>

In their summary judgment motion, Plaintiffs contend that the Policy provides no UM/UIM coverage for the subject accident. I agree. First, the Policy's Business Auto Coverage Form describes those vehicles that are subject to UM/UIM coverage as follows: "Only those autos you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage." As noted above, Plaintiffs' fleet was principally garaged and/or licensed in Tennessee, California, and Illinois. Roadway executed rejection forms specifically documenting its rejection of UM/UIM coverage in California and Tennessee, as those states both allow complete rejection.[2] *See* CAL. INS. CODE § 11580.2(a)(1); TENN. CODE ANN. § 56-7-1201(a)(2). Unlike California and Tennessee, Illinois does not allow for the rejection of UM/UIM coverage. Under the terms of the Policy, the Illinois UM/UIM coverage is limited to $20,000 per

---

[2] In addition to the rejection forms, the exclusion of California and Tennessee from the endorsements in the Policy specifically listing those states where UM/UIM coverage was available is further evidence of Roadway's rejection of this coverage. *See Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 325, 524 S.E.2d 386, 390 (2000) ("An insured's rejection of the coverage can be inferred from the insured's failure to select such coverage.").

person.  This coverage, however, only applies if the driver responsible for the accident was driving a vehicle that was by definition underinsured.  *See, e.g., Golladay v. Allied Am. Ins. Co.*, 648 N.E.2d 157, 159 (Ill. App. Ct. 1995).  Here, Mickey Hayes, the person responsible for the accident, was covered under an automobile liability policy with a liability limit of $50,000.  Defendants have received the full policy limits of $50,000 from Hayes' policy.  Since the $50,000 limits of Hayes' insurance policy exceeded the $20,000 limits of Roadway's UM/UIM policy, Hayes was not "underinsured" under Illinois law, and therefore the Policy's Illinois UM/UIM coverage would not apply.  In sum, I agree with Plaintiffs that there is no UM/UIM coverage available to Defendants.

Furthermore, the Policy only provides for UM/UIM coverage in those states where the equipment is licensed or principally garaged and where coverage cannot be rejected.  Plaintiffs have presented evidence on summary judgment that the equipment at issue in this case was neither licensed nor principally garaged in North Carolina.  Therefore, North Carolina's UM/UIM rules have no bearing on the case's analysis.  In any event, even if the equipment were licensed or principally garaged in North Carolina, there would still be no UM/UIM coverage available to Defendants under the Policy because Roadway specifically rejected it.[3]  For all these reasons,

---

[3] As Plaintiffs note, although Roadway was not required to complete any special form to reject coverage as a for-hire motor fleet, Roadway did endorse the official North Carolina Rate Bureau form, dated March 1, 2004, indicating its rejection of UM/UIM coverage. *See Great Am. Ins. Co. v. Freeman*, 192 N.C. App. 497, 501, 665 S.E.2d 536, 539 (2008).  Furthermore, the Policy shows the intent to reject coverage by rejecting

I find as a matter of law that the Policy between Plaintiffs Roadway and Old Republic does not provide UIM coverage arising out of the March 2004 vehicle collision that killed Mark Joseph Horn.

Finally, it appears that Defendants have erroneously asserted that, under the terms of the Policy Old Republic's UM/UIM liability begins after Roadway's self-insured coverage of $3 million for UM/UIM benefits is exhausted. In other words, Defendants contend that Roadway is obligated to pay $3 million in UIM coverage and that Old Republic is obligated, in turn, to pay $3 million in excess UIM coverage. Defendants appear to contend that Plaintiffs did not properly reject UIM coverage and that they are entitled to the full liability amounts on the Policy, which Defendants maintain totals $6 million. *See Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 323, 524 S.E.2d 386, 388 (2000) (noting that under North Carolina law, "when a mandatory selection/rejection form is not completed, the underinsured motorist coverage provided by the carrier equals the limits of its liability coverage under the policy"). I have already found, however, that Plaintiffs properly rejected UIM insurance in the states in which they were required to do so, including in North Carolina. Furthermore, I agree with Plaintiffs that the Deductible Coverage Endorsement makes clear that Roadway's $3 million deductible reduces Old Republic's applicable coverage limits. In other words, as Roadway pays its $3

---

coverage in all states where coverage can be rejected, including North Carolina, and by delineating coverage limits in other states, while omitting North Carolina.

million deductible for an accident, Old Republic's limits fall to zero.  As Plaintiffs explain, the type of policy at issue here is known as a "fronting policy," and is common in the industry to legally enable large freight carriers to be essentially self-insured.  As one court has explained:

> A fronting policy . . . has been defined as a legal risk management device, typically used by large corporations operating in multiple states, in which the corporation pays a discounted premium to an insurer.  The insurer maintains licensing and filing capabilities in a particular state or states, and issues an insurance policy covering the corporation in order to comply with the insurance laws and regulations of each state.
>
> The corporation retains at least part of the risks covered under the fronting policy.  One such means of retaining the risk, as seen in the present case, is by a deductible which equals the policy's liability limits.  The insured usually is left to administer all claims, although the insurer may reserve this authority to itself in some instances.  The insured agrees to reimburse the insurer for all payments it must make.

*Croft v. Old Republic Ins. Co.*, 365 S.C. 402, 414, 618 S.E.2d 909, 915 (2005). Thus, to the extent that Defendants are attempting to argue that Plaintiffs did not reject UIM insurance and that Defendants are therefore entitled to a total of $6 million in UIM insurance under the Policy, this is simply an incorrect interpretation of the Policy's terms.

Plaintiffs' Summary Judgment Motion as to Defendants' Counterclaim

Next, Plaintiffs ask this court to enter summary judgment in Plaintiffs' favor as to Defendants' counterclaim.  Defendants assert that they are entitled to UIM coverage from the Policy based primarily on unsupported accusations of fraudulent activity on behalf of Plaintiffs and their counsel.  Defendants argue that coverage

should exist because a law partner of Plaintiffs' counsel allegedly represented to counsel for Defendants that the Policy was intended to provide coverage, but that the partner was going to work with Old Republic and Roadway to cheat Defendants out of coverage. As Plaintiffs note, however, discovery is over, and Defendants have presented no evidence whatsoever to support this claim.

Defendants also accuse Old Republic and Roadway of scheming to avoid North Carolina UIM coverage by returning the "policy premium for the UIM coverage on North Carolina operations at issue in this case" after learning of the March 2004 accident. Plaintiffs have offered evidence, however, that Roadway has never paid a premium under the Policy to Old Republic for UM or UIM coverage in North Carolina.

In any event, it is well-settled that equitable theories such as waiver or estoppel "cannot be used to create coverage which is nonexistent or expressly excluded from a policy." *Brendle v. Shenandoah Life Ins. Co.*, 76 N.C. App. 271, 276, 332 S.E.2d 515, 518 (1985); *see also Hannah v. Nationwide Mut. Fire Ins. Co.*, 190 N.C. App. 626, __, 660 S.E.2d 600, 604 (2008) (citing cases). Therefore, even if Defendants had presented any evidence of nefarious conduct by Plaintiffs, which they have not, the result would still be the same.[4]

---

[4] As Plaintiffs note, Defendants have also asserted an "unfair claims handling practices" theory, but since there is no coverage, there can be no bad faith in the claims handling. *See, e.g., Wilson v. Wilson*, 121 N.C. App. 662, 665, 468 S.E.2d 495, 497-99 (1996).

**Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** both motions for summary judgment by Plaintiffs (docket nos. 43, 45) and **DECLARE** as a matter of law that Plaintiffs owe no UIM benefits to Defendants. Furthermore, to the extent that Plaintiffs seek costs and attorney's fees in this action, each party should bear its own costs and attorney's fees.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
September 8, 2010